# UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND

COLUMBIA GAS TRANSMISSION, LLC,

      Plaintiff,

      v.

JANET MALIN HAAS and
MELVIN LEROY HAAS,

      Defendants.

Civil Action No. TDC-17-1147

## MEMORANDUM OPINION

Plaintiff Columbia Gas Transmission, LLC ("Columbia Gas") has brought this breach of contract action against Defendants Janet Malin Haas and Melvin Leroy Haas to enforce an easement traversing Defendants' residential property. Columbia Gas asserts that a maple tree planted near an underground gas pipeline owned by Columbia Gas must be removed under the terms of the easement. Defendants oppose the removal of the tree and have also filed a Counterclaim in which they assert that if the tree is removed, Defendants should be compensated for its loss. Pending before the Court is Columbia Gas's Motion for Summary Judgment and Motion to Dismiss Counterclaim, or in the Alternative, Motion for Summary Judgment as to the Counterclaim ("Motion for Summary Judgment"). ECF No. 56. Also pending is the Defendants' Motion for Leave to Supplement the Record. ECF No. 65. The Court held a hearing on these Motions on September 6, 2018. For the following reasons, Defendants' Motion is GRANTED, and Columbia Gas's Motion for Summary Judgment is DENIED.

# BACKGROUND

Janet and Melvin Leroy Haas bought their home in Brinklow, Maryland ("the Property") in 1975. They understood at the time of purchase that the Property was subject to an easement originally created in 1955 in favor of the Atlantic Seaboard Corporation. The easement granted Atlantic Seaboard and its successors "the right to lay, maintain, operate and remove a pipe line for the transportation of gas, and appurtenances necessary to operate said pipe line over and through" the Property. Easement at 1, Pl.'s Mot. Summ. J. Ex. 2, ECF No. 56-3. The easement further provided that "the gas line to be laid under this grant shall be constructed and maintained below cultivation, so that Grantors may fully use and enjoy the premises, subject to the rights of the Grantee to maintain and operate said lines." *Id.* Atlantic Seaboard also "agree[d] to pay for any damages that may arise from the maintenance, operation and removal of said lines." *Id.* Pursuant to the easement, a 26-inch, underground, high pressure natural gas pipeline was installed through the Property in 1955 and is now maintained and operated by Columbia Gas, Atlantic Seaboard's successor-in-interest.

The Haas residence was constructed on the Property in the early 1970s, with the corner of the home approximately 25 feet from the buried pipeline. Mr. Haas enjoys gardening as a hobby, and in the 40 years that he has lived on the Property, he has devoted countless hours to maintaining and improving the landscaping, spending thousands of dollars in the process. In 1976, he planted a Burgundy Lace Japanese maple tree ("the Maple Tree") approximately two feet from the center of the pipeline. Haas did not ask permission from Columbia Gas or its predecessor before he planted the Maple Tree. The Maple Tree is still alive today and serves as a foundational specimen in the front-yard landscaping.

Although Columbia Gas routinely performed inspections of the pipeline, it was not until approximately September 22, 2016 that anyone, whether from Columbia Gas or its predecessor, told Mr. Haas that the Maple Tree would need to be removed pursuant to the terms of the easement. Mr. Haas objected to the tree's removal. Columbia Gas has thus filed this lawsuit to enforce its rights under the easement, seeking declaratory and injunctive relief. Defendants have filed a counterclaim, seeking monetary damages should the tree be removed.

The parties are now before the Court on summary judgment. In addition to disagreeing on the proper interpretation of the easement, the parties dispute whether the Maple Tree interferes with the operation or maintenance of the pipeline. On the latter issue, Columbia Gas has submitted (1) the expert report, declaration, and deposition transcript of Andrew Kvasnicka, a pipeline engineer; (2) the declaration of Antonio Redd, a Senior Land Agent with a bachelor's degree in industrial engineering; and (3) the declaration and deposition transcript of Francis Stone, a transmission mechanic whose duties include locating pipelines and determining their depths. All of these individuals are Columbia Gas employees.

Combined, these submissions reflect five primary concerns. First, Columbia Gas contends that the Maple Tree's canopy limits the utility of aerial patrols, Columbia Gas's preferred—but not only—method of conducting surface inspections to identify leaks, construction activity, and other safety risks. Kvasnicka, Columbia Gas's pipeline engineer, stated in his deposition that aerial surveillance consists of both visual inspection of the ground and the use of instruments that recognize the presence of gas, should there be a gas leak. Kvasnicka further asserted that aerial patrols are more accurate than other forms of surveillance, such as walking the length of the pipeline. According to Kvasnicka, who never actually visited the Property, the Maple Tree obstructs both visual inspection from the air and the instruments

used by the aerial patrols. Kvasnicka admitted, however, that Columbia Gas still performs walking inspections in areas where aerial surveillance is unavailable and acknowledged that Columbia uses foot patrols as part of its survey activities. Moreover, Columbia Gas's October 3, 2016 "Facility Patrol and Leakage Inspection Plan" provides that "walking" is one approved patrol method. Facility Patrol and Leakage Inspection Plan at 4, Defs.' Opp'n Mot. Summ. J. Ex. 5, ECF No. 57-6.

Second, Columbia Gas argues that the Maple Tree's roots may damage the pipeline's coating and cathodic protection, which if left unrepaired could cause pipeline corrosion. Cathodic protection consists of a protective coating on the outside of the pipeline and a low-level electric current that flows to the pipeline wherever there is a break in the coating. According to Kvasnicka, by damaging the pipeline's coating and disrupting the electric current, tree roots can harm a pipe's cathodic protection, leaving the pipe vulnerable to corrosion. Columbia Gas therefore takes the position, as stated in its internal "Minimum Guidelines for Construction Near Pipeline Facilities," dated July 2015, that "[s]hrubs greater than 5 feet tall and trees . . . are prohibited" from the right-of-way covered by pipeline easements. Min. Guidelines at 1, Mot. Summ. J. Ex. 8, ECF No. 56-9.

Central to this concern is the distance between the Maple Tree's roots and the pipeline. Stone determined that the pipe is approximately 4.5 feet below ground in the area immediately around the Maple Tree by using an instrument he called a "pipe locator." Stone Dep. at 19–21, 24, Pl.'s Reply Ex. 4, ECF No. 58-4. Using a separate tool called a "T-bar," a long, pointed metal rod with a handle across the top so as to make a "T" shape, Stone determined that the pipe was four feet below ground at a location 8–10 feet away from the Maple Tree. Stone Decl. ¶ 7,

Pl.'s Reply Ex. 2, ECF No. 58-2. Stone measured that elsewhere on the Property, the pipeline was at a depth of three feet, which is a standard depth for this type of pipeline.

In contrast, Defendants argue that the pipeline is at least five feet below the tree because when the house was built and when the tree was planted, a significant amount of fill dirt was added to the area, increasing its elevation relative to the rest of the yard. Moreover, Defendants offered an assessment by arborist Diane Knighton, who used ground radar to locate the Maple Tree's roots. Based on the radar and her own experience with trees of this variety, Knighton determined that most of the tree roots, which spread out across a 16-foot radius from the tree, are 15–23 inches below the ground, and that none extend further than 27 inches below the surface. Nowhere in the record does Columbia Gas provide an expert opinion on how close tree roots must be to the pipeline in order to damage it.

Defendants have also submitted excerpts from the deposition of William Rew, III, a Columbia Gas corrosion technician. In that role, Rew performs annual tests on Columbia Gas's pipelines to ensure that the cathodic protection is working so as to prevent corrosion or rusting of the pipeline. He testified that he has never had adverse readings on the length of pipeline near the Property that would indicate that the cathodic protection is failing.

Third, Columbia Gas argues that the presence of the Maple Tree would cause delays should the pipeline need to be reached quickly for repairs, especially if the roots are wrapped around the pipeline. In his expert report, Kvasnicka, without having visited the Property, claims that due to its size and proximity to the pipeline and the assumption that tree roots could be wrapped around the pipeline, the Maple Tree could delay reaching the pipeline by "several days" should emergency repairs be necessary. Kvasnicka Rep. at 6, Pl.'s Mot. Summ. J. Ex. 6, ECF No. 56-7. In contrast, Defendants have submitted a letter from J. Kelly Lewis, the General

Manager of Ruppert Nurseries, Inc., a company that specializes in moving large trees. Having inspected the Maple Tree, Lewis asserts that the Maple Tree could be removed, roots and all, within two hours.

Fourth, Columbia Gas argues that the Maple Tree's presence interferes with its ability to prevent third-party damage to the pipeline. Kvasnicka asserts that the Maple Tree must be removed to better delineate the pipeline's right-of-way, so as to deter unauthorized excavation of the area by third parties that could damage the pipeline. In response, Defendants have affirmed that they would never allow a third party to perform excavation work on the Property without first contacting Columbia Gas and would be willing to post signs to alert the public to the presence of the pipeline.

Fifth, a December 2013 test called a "Smart PIG Inspection," which involves sending an instrument known as a PIG through the length of the pipe to collect data such as readings of the pipeline's thickness, revealed that an unused "tap" of unknown length was located at the 12 o'clock position on the pipeline at the same GPS coordinates as the Maple Tree. Kvasnicka Dep. at 40–42, Pl.'s Reply Ex. 3, ECF No. 58-3. A tap is a smaller pipe extending off of the main pipeline. Such taps were installed in the 1950s to allow natural gas to be distributed to properties along the pipeline's length. According to Kvasnicka, Columbia Gas's practice is to excavate and examine such taps to ensure that they were properly abandoned. Such abandoned taps are routinely sealed at their endpoint, not where they join the pipe, which means that the tap itself is filled with gas. The tap, like the rest of the pipeline, contains a coating that can be damaged by tree roots. For the past 40 years, no problems associated with the tap have been identified.

As for the location of the tap, Kvasnicka asserts that the tap is directly below the Maple Tree, because he was provided with GPS coordinates for the Maple Tree and those coordinates

6

line up with the GPS coordinates provided by the PIG for the location of the tap. Accordingly, Kvasnicka asserts that the Maple Tree must be removed in order to expose and inspect the tap as required by Columbia Gas's maintenance protocol. Stone, who was tasked with locating the tap, has stated that he found it at a depth of 27 inches using the T-bar. Although he did not state exactly how far away from the tree he was when he made this measurement, he did not use the T-bar anywhere within an 8-10 radius of the tree. The ground radar scans by Knighton also reveal an object at a distance of eight feet from the Maple Tree at a depth of approximately 23 to 31 inches. When asked about this object at her deposition, Knighton testified that items that produce such readings are typically metal and although she did not know precisely what it was, it could be a pipe.

On April 12, 2018, after the completion of briefing on Columbia Gas's Motion for Summary Judgment, Defendants filed a Motion for Leave to Supplement the Record. In order to aid the Court in interpreting the easement and its provision that the pipeline should be laid "below cultivation," Easement at 1, Defendants seek leave to add to the record aerial photographs, taken in 1951, showing the presence of orchards on or near the Property, or, alternatively, for the Court to take judicial notice that the area was farmland in the 1950s, when the easement was signed. Columbia Gas opposes this Motion.

## DISCUSSION

As a preliminary issue, Columbia Gas seeks summary judgment on the issue of the width of the easement. Because the parties agree that it is 50-feet wide, there is no genuine issue of fact on this point, and summary judgment will be granted. The parties, however, strongly disagree on the remaining issues.

7

Columbia Gas argues that it is entitled to summary judgment on whether the Maple Tree must be removed for two reasons. First, it asserts that the planting of the Maple Tree near the pipeline was a breach of the easement, because Defendants' right to "fully use and enjoy" the Property, as stated in the easement, necessarily does not include planting trees in the right-of-way because all trees obstruct Columbia Gas's own rights under the easement. Easement at 1. Defendants therefore violated the easement in 1976 when they planted the Maple Tree and are not entitled to have it remain there. Second, Columbia Gas argues that the tree currently interferes with the operation and maintenance of the pipeline, thereby meriting its immediate removal. It further seeks either dismissal of, or summary judgment on, Defendants' Counterclaim on the grounds that Defendants breached the easement when they planted the Maple Tree. In response, Defendants argue that (1) the planting of the Maple Tree did not breach the easement, and the tree does not unreasonably interfere with the operation or maintenance of the pipeline; (2) the doctrines of waiver and estoppel preclude Columbia Gas from enforcing the easement where they have taken no action to remove the tree during the over 40 years since it was planted in 1976; and (3) pursuant to the easement, they are entitled to damages should the tree be ordered removed.

I.      **Motion to Supplement the Record**

As a preliminary matter, after the briefing on the Motion was complete, Defendants submitted aerial photographs of the area near their Property, taken in 1951, which appear to show that the Property was at least somewhat covered in trees—and possibly an orchard—at the time. Defendants seek leave to have these photographs included in the record or, alternatively, ask the Court to take judicial notice pursuant to Federal Rule of Evidence 201 that the part of Montgomery County where the Property is located was farmland in 1955.

Defendants have provided adequate authentication of the photographs. Where Defendants have explained that the failure to include such evidence was based on their lack of understanding that the state of the Property at the time of the easement would be in dispute, they have provided an adequate explanation for the late submission. Most importantly, Columbia Gas is not prejudiced by this submission. It was on notice that Defendants would seek leave to introduce these photographs as of a Case Management Conference on April 3, 2018. To the extent that it would have any reason to offer contrary evidence, it had the opportunity to obtain such evidence and submit it. Accordingly, the Court will grant the Motion to Supplement the Record.

## II.    Motion for Summary Judgment

### A.    Legal Standard

Where both parties have submitted exhibits to be considered in resolving Columbia Gas's Motion, the Court will construe it as a Motion for Summary Judgment. *See* Fed. R. Civ. P. 12(d). Under Federal Rule of Civil Procedure 56, the Court grants summary judgment if the moving party demonstrates that there is no genuine issue as to any material fact, and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). In assessing the Motion, the Court views the facts in the light most favorable to the nonmoving party, with all justifiable inferences drawn in its favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). The Court may rely only on facts supported in the record, not simply assertions in the pleadings. *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 522 (4th Cir. 2003). A fact is "material" if it "might affect the outcome of the suit under the governing law." *Anderson*, 477 U.S. at 248. A dispute of material fact is

only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Id.* at 248–49.

## B.    Easement

Columbia Gas first argues that it is entitled to summary judgment because the easement barred the planting of the Maple Tree above the pipeline. In Maryland "[t]he interpretation of mortgages, plats, deeds, easements and covenants has been held to be a question of law." *Webb v. Nowak*, 72 A.3d 587, 596 (Md. 2013). An easement created by a deed, known as an express grant, is interpreted by applying traditional rules of contract interpretation to the conveying document. *See Long Green Valley Ass'n v. Bellevale Farms, Inc.*, 68 A.3d 843, 855–56 (Md. 2013); *Chevy Chase Land Co. v. United States*, 733 A.2d 1055, 1073 (Md. 1999) ("[T]he primary consideration in construing the scope of an express easement is the language of the grant."). When interpreting express grants, "a court should ascertain and give effect to the intention of the parties at the time the contract was made, if that be possible." *Miller v. Kirkpatrick*, 833 A.2d 536, 545 (Md. 2003) (quoting *Buckler v. Davis Sand & Gravel Corp.*, 158 A.2d 319, 322 (Md. 1960)). Hence, the court's "focal point is the language of the agreement itself[,] seeking to discern what a reasonable person in the position of the parties would have meant at the time it was effectuated." *Long Green Valley*, 68 A.3d at 856 (internal citation omitted).

"The first step for a court asked to grant summary judgment based on a contract's interpretation is ... to determine whether, as a matter of law, the contract is ambiguous or unambiguous on its face." *Wash. Metro. Area Transit. Auth. v. Potomac Inv. Props., Inc.*, 476 F.3d 231, 235 (4th Cir. 2007) (quoting *Goodman v. Resolution Trust Corp.*, 7 F.3d 1123, 1126 (4th Cir. 1993)). A contract is ambiguous if it is "susceptible to two reasonable interpretations."

*Potomac Inv. Props., Inc.*, 476 F.3d at 235. If a contract is ambiguous, such as "when the intent of the parties and the purpose of" of the contract "cannot be divined from the actual language," the court may turn to extrinsic evidence of the parties' intent. *City of Bowie v. MIE, Props., Inc.*, 922 A.2d 509, 523 (Md. 2007) (discussing the interpretation of restrictive covenants). If the easement is ambiguous and "resort to extrinsic evidence . . . leaves genuine issues of fact respecting the contract's proper interpretation, summary judgment must of course be refused and interpretation left to the trier of fact." *Id.*

The easement here provides that the pipeline was to be "constructed and maintained below cultivation, so that Grantors may fully use and enjoy the premises, subject to the rights of [Columbia Gas] to maintain and operate said line." Easement at 1. The Court finds this language to be unambiguous on the issue whether there was a general bar on the planting of trees on the easement above the pipeline. By expressly stating that Defendants "may fully use and enjoy the premises," the easement authorizes all uses of the land to the extent that they do not interfere with Columbia Gas's right to maintain and operate the pipeline. *Id.* Under the plain language of the easement, there is no automatic prohibition on the planting of trees in any particular location.

Columbia Gas argues that the language stating that Defendants' right to use the premises is "subject to the rights . . . to maintain and operate said line," *id.*, implies that the planting and growing of any trees in the area above the pipeline is barred by the easement, because trees necessarily impede its right to "maintain and operate" the pipeline. But that proposition is not self-evident from the terms "maintain and operate." Moreover, such an intent is inconsistent with the description of Defendants' general right to "fully use and enjoy the premises," *id.*, a

broad phrase that would not have been used had the parties intended such a significant and specific limitation on land use.

This interpretation is supported by the additional language that the pipeline was to be "constructed and maintained below cultivation." *Id.* Although the easement does not define the term "cultivation," the Oxford English Dictionary defines it as "[t]he action or an act of preparing and using the land for growing crops," or "[t]he action or an act of growing and improving a plant, esp[ecially] for commercial purposes." *Cultivation, n.*, OED Online (Oxford Univ. Press 2018), www.oed.com/view/Entry/45728. Provided examples of the word's usage include several references to cultivating trees. *Id.* These examples are consistent with common usage and common sense, that the term "cultivation" can include all manner of plants, including trees.

Thus, the natural reading of this provision is that the easement contemplates that there will be cultivation within the easement and generally requires that the pipeline remain at a depth below the level to which plant roots, including the roots of cultivated trees, descend. Had the original grantee deemed it important to bar the planting of trees within the easement, it could have bargained for such a term and included it as an exception to the right to "fully use and enjoy the premises," or defined "cultivation" as limited to certain plants or crops, but it did not do so. *See Columbia Gas Transmission, LLC v. Ott*, 984 F. Supp. 2d 508, 513, 519–20 (E.D. Va. 2013) (finding that a pipeline easement held by Columbia Gas that specifically prohibited the presence of any "buildings or structures" within the right of way plainly barred a fence on the premises, but that a separate easement generally granting the right to "fully use and enjoy the premises," subject to the grantee's rights, required an assessment whether the fence actually interfered with pipeline operation and maintenance). The Court will not read into the easement a *per se*

prohibition on trees where none was stated. Rather, the planting of trees is limited only to the extent that it actually interferes with the maintenance and operation of the pipeline. *See id.*

In the alternative, even if the easement were to be deemed ambiguous, the extrinsic evidence that would be considered bolsters the Court's interpretation. First, Columbia Gas's argument that the right to "maintain and operate" the pipeline includes an implied term that precludes the planting and cultivating of a tree above the pipeline is undermined by the evidence that for over 40 years after Defendants planted the Maple Tree, Columbia Gas and its predecessors were not actually prevented from maintaining and operating the pipeline. The pipeline remained fully operational, and Columbia Gas was able to conduct all necessary tests and monitoring activities. Moreover, the photographs submitted by Defendants show that part of the Property appears to have been an orchard during the time period when the easement was executed, which provides additional support for the Court's determination that the term "cultivation," in the context of the time and place of the easement, included the growing of trees. The fact that Columbia Gas's current Minimum Guidelines may preclude trees within a certain distance of a pipeline is irrelevant to the parties' intent in 1955, particularly when, on their face, they expressly acknowledge that "[i]n the event that the provisions of an applicable land rights document conflicts with the requirements" in the Guidelines, "the land rights document shall supersede these requirements." Min. Guidelines at 1. Thus, even if the easement were to be deemed ambiguous, the Court's conclusion would be the same: Defendants did not violate the easement simply by planting the Maple Tree in 1976.

By the same reasoning, the easement, or any other like it with the same language, does not grant unlimited rights to grantees like Columbia Gas to remove all trees, shrubs, and vegetation within the right of way as a matter of convenience, precaution, or compliance with its

own internal standards unilaterally adopted long after the easement was signed. Rather, where the grantor bargained for the expansive right to "fully use and enjoy the premises," with no restrictions on such use other than the general right of the grantee to "maintain and operate the pipeline," these opposing rights are reconciled by permitting the grantor to maintain trees and plants on the premises unless there is a showing that the particular tree or plant unreasonably interferes with the actual maintenance and operation of the pipeline. *See, e.g., Texas E. Transmission Corp. v. Towamencin Twp.*, No. CIV.A 96-CV-6005, 1997 WL 381604, at *2 (E.D. Pa. July 8, 1997) (denying relief to a pipeline company because the trees at issue had not yet become an actual impediment to accessing the pipeline); *Strahm v. Buckeye Pipe Line Co.*, No. 1-10-60, 2011 WL 915575, at *7 (Ohio Ct. App. Mar. 14, 2011) (denying summary judgment to require removal of trees from an easement where there was no evidence that the trees' roots actually or likely interfered with the pipeline).

### C. Current Interference with Operation and Maintenance

Based on the Court's interpretation of the easement, the Maple Tree's presence is in violation of the easement only if Columbia Gas has shown that the tree unreasonably interferes with its ability to maintain and operate the pipeline. *Rogers v. P-M Hunter's Ridge, LLC*, 967 A.2d 807, 819 (Md. 2009) (stating that in the event of an easement, "the land remains the property of the owner of the servient estate, and he is entitled to use it for any purpose that does not interfere with the easement"); *Miller*, 833 A.2d at 544 (stating that the owner of the servient estate may not impose an obstruction that would "prevent or interfere with the[] reasonable enjoyment" of the holder of the easement); Restatement (Third) of Property § 4.9 (Am. Law Inst. 1007) ("[T]he holder of the servient estate is entitled to make any use of the servient estate that does not unreasonably interfere with enjoyment of the servitude."). The Court will therefore turn

to Columbia Gas's five areas of concern regarding the Maple Tree's impact on the ability to maintain and operate the pipeline.

Columbia Gas first argues that the Maple Tree must be removed so that it can perform aerial patrols of the length of the pipeline. Routine surveillance of gas pipelines to identify leaks and other unusual operating or maintenance conditions is required by federal regulations. *See* 49 C.F.R. § 192.613(a) (2018). Columbia Gas maintains that it uses aerial patrols to meet this requirement because such patrols are more accurate than other forms of surveillance. According to Kvasnicka, the Maple Tree obstructs both visual inspection from the air and the instruments used by aerial patrols.

Aerial patrols, however, are not the only means to accomplish these necessary inspections. Prior to the advent of the technology now used to conduct aerial patrols, Columbia Gas performed these patrols through on-the-ground inspections of the length of the pipeline. Kvasnicka admitted in his deposition that when aerial surveillance is unavailable, walking the site is an alternative method, and Columbia Gas lists walking the pipeline as an approved method for conducting such surveys in its Facility Patrol and Leakage Inspection Plan. In fact, Columbia Gas still uses walking inspections to this day, particularly in areas near airports. Where there is an approved survey method that could be employed in the presence of the Maple Tree, Columbia Gas has not shown that the Maple Tree unreasonably interferes with its right to conduct maintenance on the pipeline. At a minimum, there is a genuine issue of material fact, based on the contradictory statements of Columbia Gas's own witness and documents, whether the Maple Tree needs to be removed on this basis. *See Texas E. Transmission LP v. Bowers*, 65 F. App'x 791, 796 (3d Cir. 2003) (finding that a tree did not need to be removed for aerial inspection of the pipeline).

Second, Columbia Gas argues, based on Kvasnicka's opinion, that the Maple Tree must be removed because the tree's roots may damage the pipeline's coating and cathodic protection, potentially resulting in corrosion of the pipeline. Although Kvasnicka has stated that the Maple Tree prevents an accurate Close Interval Survey, used to determine the sufficiency of the cathodic protection, Mr. Haas has asserted in his affidavit that Columbia Gas performed one in 2010 and did not, based on its results, seek to remove the Maple Tree. More importantly, according to the deposition testimony of William Rew, Columbia Gas's own corrosion technician, tests performed on the length of pipeline near the Property reveal that the cathodic protection is intact and have detected no problems. The results of the PIG survey also have not identified any weaknesses in the pipeline necessitating attention. Thus, Columbia Gas's own tests reveal no sign that the Maple Tree has degraded the cathodic protection. Other than to address the tap, discussed below, Kvasnicka has acknowledged that at the present time, there is no actual need to access the pipeline.

Furthermore, Defendants have provided a ground radar report and the expert opinion of Diane Knighton, an arborist, which together show that the tree's roots do not reach more than 27 inches below the surface. Knighton explained that tree roots generally are found in the top two feet of soil, and that maple trees specifically are known to have shallow roots. According to Columbia Gas's own witnesses, the pipeline is approximately 4.5 feet below the ground in the area immediately around the tree and four feet below ground in the area approximately eight feet away from the tree. While Kvasnicka is adamant that the tree presents a "risk" and needs to be removed, he acknowledged that he does not actually know the depth of the pipeline and does not know how close the Maple Tree's roots would have to be to pose an actual threat. Kvasnicka Dep. at 86, 91. Notably, Columbia Gas acknowledges that Kvasnicka has never actually visited

16

the Property or seen the Maple Tree. Thus, where Kvasnicka's summary opinion that the Maple Tree must be removed is contradicted in part by evidence showing that there is a gap of roughly 21 inches between the roots and the pipeline, and Columbia Gas's own testing has shown no degradation of the cathodic field, the Court finds that there is, at a minimum, a genuine issue of material fact on whether the Maple Tree's roots are an actual danger to the pipeline.

Third, Columbia Gas argues that the Maple Tree should be removed because it interferes with the federal requirement that pipeline operators must have procedures for "making safe any actual or potential hazard to life or property," 49 C.F.R. § 192.615(a)(7), or to address emergencies, 49 C.F.R. § 192.605(a), caused by a pipeline, in that the Maple Tree's presence would cause delays should the pipeline need to be reached quickly for repairs. In support, Columbia Gas offers Kvasnicka's opinion that the Maple Tree, due to its size and proximity to the pipeline, could delay reaching the pipeline by "several days" should the tree need to be removed for emergency repairs to the pipeline. Kvasnicka Rep. at 7. His opinion, however, appears to rest on the assumption that the tree's roots are wrapped around the pipeline, thereby requiring delicate and careful work to extract the tree. In response, Defendants have provided a statement by J. Kelly Lewis, General Manager of Ruppert Nurseries, Inc. and a specialist in large tree removal, who viewed the Maple Tree and opined that his company could remove the Maple Tree in 45 minutes, or two hours if the removal included the tree's roots. In his deposition testimony, Lewis clarified that the two-hour time frame was accurate if his company could use a backhoe to remove the tree. If mechanized equipment could not be used due to proximity to the pipeline, he asserted that removing the tree would take four to eight hours, depending on the tools used.

On this record, the Court finds that there is a genuine issue of material fact on how long it would take to remove the Maple Tree in the event of an emergency. Columbia Gas has not established that removal within the timeframe estimated by Defendants' expert witness would impose an unreasonable burden on Columbia Gas's ability to operate and maintain the pipeline. *See Bowers*, 65 F. App'x at 795 (upholding a finding that a delay of 10 hours to conduct emergency repairs due to the presence of a tree was a "minimal burden" that did not warrant the tree's immediate removal). The Court therefore will not grant summary judgment to Columbia Gas to remove the Maple Tree on this basis.

Fourth, Columbia Gas argues that the Maple Tree must be removed because third parties may not realize that there is a pipeline in the right-of-way due to the tree's presence and may therefore harm the pipeline by digging on the Property. The Court will not grant summary judgment to Columbia Gas on this basis. Columbia Gas's concern is purely speculative, especially after Defendants have been clear that they would not allow a third party to perform excavation work on the Property without Columbia Gas's consent and are prepared, if necessary, to post signs informing the public of the pipeline's presence.

Finally, Columbia Gas argues that the Maple Tree must be removed because there is a tap protruding from the main pipeline at the 12 o'clock position and at the same GPS coordinates as the Maple Tree. Kvasnicka testified that Columbia Gas's standard practice is to excavate such a tap to ensure that it was properly abandoned. Noting that the tap would ordinarily be sealed at its far end, and thus remains filled with gas from the main pipeline, Kvasnicka asserted that the tap may itself be endangered by the tree's roots.

Defendants note that for the 40 years that the Maple Tree has been present, the tap has exhibited no problems requiring any attention. It is therefore unclear whether, aside from

Columbia Gas's unilateral policies, there is an actual need to excavate the tap. Even assuming a need to check on the tap, there is a factual issue on the location of the tap in relation to the Maple Tree and thus whether the tree must be removed in order to do so. Kvasnicka's opinion that the Maple Tree must be removed in order to examine the tap is premised on his assumption that the tap is directly underneath the tree. Although Kvasnicka states that the GPS coordinates for the tree match the PIG's readings for the location of the tap, he does not explain how precise those GPS coordinates were, and other evidence in the record places the tap at some distance from the Maple Tree's trunk. Although Stone, who found the tap 27 inches below the ground, did not state specifically how far he was from the tree when he found the tap, he testified that he used the T-bar no closer than 8–10 feet from the tree. Knighton, Defendants' arborist, through the use of ground radar, found an unknown metal object, possibly the tap, at a distance of about eight feet from the tree and at a depth of approximately 23 to 31 inches. Thus, there is a genuine issue of fact on where the tap is located. There is nothing in the present record that shows that if the tap is eight or more feet away from the Maple Tree, the only way to access the tap to ensure that it was properly abandoned would be to remove the tree entirely. Accordingly, the dispute of fact on the location of the tap is material and precludes summary judgment on this issue.

In the end, Kvasnicka's opinions largely consist of generalized positions on the potential risks of trees near pipelines dependent on assumptions that are in conflict with specific facts found elsewhere in the record about the particular tree in question, such as those relating to the root structure of the Maple Tree and other trees of its species, the proximity of those roots to the pipeline, the results of prior cathodic testing on the Property, and contrary expert testimony on the time required to remove this particular tree. Under these circumstances, the Court cannot grant summary judgment in favor of Columbia Gas.

The Court reiterates that easements in favor of pipeline companies, like all express grants, are contracts that are governed by their express terms, and that under the terms of this easement, the presence of a tree or other form of vegetation or "cultivation" violates the easement only if Columbia Gas can establish that it actually interferes with the safe operation of the pipeline or its reasonable maintenance activities on the pipeline. Thus, although this conclusion applies to all trees and other vegetation on the Property, the Court's ruling does not specifically address the other trees and bushes that Columbia Gas has referenced in its Motion for Summary Judgment. Those items are not identified in the Complaint as subjects of this case, and no evidence was provided regarding their effect, if any, on the pipeline.

### D.    Waiver and Equitable Estoppel

Defendants have asserted the affirmative defenses of waiver and equitable estoppel. Defendants argue that because Columbia Gas and its predecessors allowed the Maple Tree to remain on the Property for 40 years, while they continued to care for and invest in it, Columbia Gas has now lost its right to remove the tree. Neither defense is applicable.

First, neither Defendants nor the Court have identified any Maryland authority recognizing the loss of an easement due to a waiver of rights by the easement holder. Rather, the closest analogue recognized in Maryland is the loss of an easement due to abandonment. An easement is abandoned when two elements are met. First, the easement holder must have an intention to abandon the easement. *Chevy Chase Land Co. v. United States*, 733 A.2d 1055, 1081–82 (Md. 1999). Second, that intention must be coupled with a decisive act demonstrating the intent to abandon the easement. *Id.* Moreover, "non-use alone is insufficient to show an intent to abandon; there must be an act or a combination of acts that unequivocally demonstrate an intention to abandon." *Id.* at 1081; *see Shuggars v. Brake*, 234 A.2d 752, 758 (Md. 1967)

("An easement may not be lost unless there is some act clearly and unequivocally indicating an intention to abandon it, and mere non-user is not enough."); *Knotts v. Summit Park Co.*, 126 A. 280, 282 (Md. 1924) ("[W]here a right of way is acquired by grant, as in this case, it cannot be lost by mere nonuser, for however long a time, unless such nonuser is accompanied by some act indicating clearly and unequivocally an intention of the grantee to abandon it."). Columbia Gas has never displayed the intention to abandon this easement. On the contrary, Defendants themselves admit that Columbia Gas has "inspect[ed] the Defendants' Property on a regular basis year in and year out" for over 40 years. Defs.' Opp'n Mot. Summ. J. at 34, ECF No. 57.

As for equitable estoppel, this defense "is the effect of the voluntary conduct of a party whereby he is absolutely precluded . . . from asserting rights which might have otherwise existed, either of property, or contract or of remedy, as against another person who has in good faith relied upon such conduct, and has been led thereby to change his position for the worse[.]" *Savonis v. Burke*, 216 A.2d 521, 522 (Md. 1966). Under Maryland law, an easement may be terminated by estoppel upon the establishment of two requirements. First, there must be "the creation of a reasonable belief that in the future the dominant owner intends not to make the use of the servient tenement authorized by the easement." *USA Cartage Leasing, LLC v. Baer*, 32 A.3d 88, 123 (Md. Ct. Spec. App. 2011) (citation omitted). Second, there must be "conduct on the part of the servient owner in reliance upon the above-described appearances, under such circumstances that a continuance of the easement would be seriously harmful to the servient owner." *Id.*; *see also Wolcott v. Demoss*, No. 1386, 2017 WL 1435980, at *13–14 (Md. Ct. Spec. App. Apr. 24, 2017) (applying the termination by estoppel doctrine to an easement created by an express grant). However, "[w]here the condition of the title is known to both parties or both have the same means of ascertaining the truth, there can be no estoppel." *Jurgensen v. New*

*Phoenix Atl. Condominium Council*, 843 A.2d 865, 876 (Md. 2004) (finding no estoppel where a condominium owner whose parking space was reduced in size after many years had access to the deed, which did not support the claim that he had a right to a larger parking space). Here, the easement was in writing and was known to both parties. Termination by estoppel is therefore unavailable.

Furthermore, as discussed above, Columbia Gas is not permitted to remove trees and large bushes from the Property unless or until those plants unreasonably interfere with Columbia Gas's ability to maintain and operate the pipeline. It may well take years, if not decades, for plants to grow large enough to become such interferences. It would therefore be inappropriate to find that Columbia Gas lost the right to remove such plants simply because it allowed the plants to remain on the Property until the plants were actually an unreasonable burden on Columbia Gas's rights.

## III. Motion to Dismiss the Counterclaim

Finally, Columbia Gas seeks dismissal of or, in the alternative, summary judgment on Defendants' Counterclaim, which seeks damages for any removal of the Maple Tree and related harm to the surrounding landscaping based on the term of the easement stating that the Grantee will "pay for any damages that may arise from the maintenance, operation and removal" of the pipeline. Easement at 1. Columbia Gas argues that Defendants' Counterclaim necessarily fails as a matter of contract interpretation because Defendants breached the easement when they planted the tree in 1976. As discussed above, however, planting the Maple Tree did not, by itself, violate the terms of the easement. *See supra* part II.B. Without a specific action by Defendants that breached the easement, the Court will not find that changes in conditions since 1976 that may have altered Columbia Gas's maintenance needs, whether arising from Columbia

Gas's unilateral adoption of more stringent maintenance standards, changes in the technology used to monitor pipelines, the recent discovery of a previously unknown tap, or other factors, should be characterized as a breach of the easement by Defendants. In the absence of such a breach, Columbia Gas is bound by the plain language of the broad damages clause, which states, without qualification, that "Grantee further agrees to pay for any damages that may arise from the maintenance, operation and removal of" the pipeline. Easement at 1. Thus, should Columbia Gas succeed in demonstrating that it now needs to remove the Maple Tree in order to conduct necessary maintenance on the pipeline, Columbia Gas would be responsible for the costs associated with the removal and resulting damages. Because Defendants' Counterclaim remains viable, Columbia Gas's Motion is denied as to the Counterclaim.

## CONCLUSION

For the foregoing reasons, Defendants' Motion for Leave to Supplement the Record is GRANTED, and Columbia Gas's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Columbia Gas's Motion is granted to the extent that the Court grants summary judgment to Columbia Gas on the issue of whether the easement is 50 feet wide. The Motion is DENIED in all other respects. A separate Order shall issue.


Date: September 14, 2018

THEODORE D. CHUANG
United States District Judge