IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND
(Greenbelt Division)

| | |
|---|---|
| **COLUMBIA GAS TRANSMISSION, LLC** d/b/a **COLUMBIA PIPELINE GROUP** : : : : **Plaintiff,** : : **JANET MALIN HAAS,** *et ux.* : : **Defendants.** : : | Case No.: 8:17-cv-01147-TDC |

### DEFENDANTS' MEMORANDUM OF LAW AS TO
### WHY FED.R.EVID. 408 DOES NOT APPLY

Defendants, Janet Malin Haas and Melvin Leroy Haas, ("Defendants"), by and through their counsel, hereby submit their Memorandum of Law As to Why Fed.R.Evid. 408 Does Not Apply.

Columbia seeks to preclude the introduction into evidence of a letter dated April 5, 2017, from Karen Stephenson, Manager, ROW Maintenance, for Columbia (Defendants' Exh. #114) and the discussions that occurred between the Defendants and Columbia prior to that letter based upon the contention that the letter and prior discussions constituted "compromise negotiations". See 408(a)(2) ("conduct or a statement made during compromise negotiations about the claim" are not admissible.") Specifically, during March 2017 when Columbia was attempting to remove the Red Maple Tree, Ms. Stephenson acknowledged to the Defendants that Columbia knew that roots of the Red Maple Tree were "shallow and non-invasive". These admissions did not occur during "compromise negotiations" but were statements made by Columbia for purposes of explaining to the Defendants that Columbia was going to remove the

Red Maple Tree regardless of the depth of the tree roots and that the "below cultivation" provision in the ROW Agreement and Defendants' right to "fully use and enjoy the premises" did not change Columbia's position. This statement did not occur in the context of "compromise negotiations". It that regard, it has been explained that: "It should be noted that the Rule does not offer opportunities to immunize statements otherwise admissible by restating them as a part of settlement negotiations, thereby rendering the evidence inadmissible." <u>Federal Evidence Court room Manual</u>, pg. 118, Weissenberger's (2019). Not only was the subject statement not made in the context of "compromised negotiations", the statement is independently admissible because it shows Columbia's knowledge regarding the depth of the tree roots, Columbia's intent to enforce its minimum guidelines regardless of the depth of the roots or the plain language of the ROW Agreement, and/or for impeachment purposes.

> As explained by one Court:
>
> > One party does not have to file suit or involve its lawyers in order for there to be an actual dispute. <u>Affiliated Mfrs., Inc., v. Aluminum Co. of Am</u>., 56 F.3d 521, 528 (3d Cir.1995). However, one-sided discussions which contain admissions of fact along with settlement demands and threats of litigation are not protected. <u>Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher</u>, 123 F.R.D. 237, 242 (S.D.Ohio 1987). Thus, a party cannot exclude a document from evidence simply because, in it, the party indicates that it considers a claim in dispute.

<u>Commonwealth Aluminum Corp. v. Stanley Metal Ass'n</u>, 186 F. Supp. 2d 770, 773 (W.D. Ky. 2001). In a case with somewhat similar facts to the instant case, the Court held as follows:

> Two days after her termination, instead of sending a bill for the eighty hours, Ms. Ullmann began a long series of letters to Taylor stating her grievances. She claims that all of these letters should be inadmissible under Fed.Evid.R. 408 which prohibits admission of statements made in compromise negotiations. For Rule 408 to be applicable, the Court must first determine

2

that compromise negotiations were in fact happening. But no such thing was occurring here. Mr. Taylor never responded to the letters or treated them as offers to settle. In large part the letters consist of Ms. Ullmann's demands upon Taylor and threats of litigation. The purpose of Rule 408 is to encourage dispute resolution, not to encourage threatening litigation by protecting admissions made in such threats. Big O Tire Dealers, Inc., v. Goodyear Tire & Rubber Company, 561 F.2d 1365 (10th Cir.1977); 23 Wright & Graham, Federal Practice and Procedure: Evidence, §5306. Considering the correspondence as a whole, the Court finds that the purpose of Rule 408 would not be served by excluding those portions of the correspondence relied upon in this opinion.

The discussions that occurred when Ms. Stephenson made these admissions were nothing more than Columbia repeatedly threatening the Defendants that unless they capitulated to Columbia's demands and allowed Columbia to remove the Red Maple Tree Columbia would sue them in Court. These were not "compromise negotiations", but threatening attempts to intimidate and pressure the Defendants into capitulating to Columbia's demands. The Courts have held that such unilateral threatening demands in the context of a dispute are not "compromise negotiations."[1]

The relevant discussions between Defendants and Columbia occurred before Defendants were represented by legal counsel and before this lawsuit commenced. The

---

[1] Accord Ullmann v. Olwine, Connelly, Chase, O'Donnell & Weyher, 123 F.R.D. 237, 242 (S.D. Ohio 1987); Atronic Int'l, GmbH v. SAI Semispecialists of Am., Inc., No. 03CV4892(JFB)(MLO), 2006 WL 2654827, at *7 (E.D.N.Y. Sept. 15, 2006) ("Where a letter provides solely demands and lacks any suggestion of compromise, such a document would not be excludable by Rule 408."); Stewart v. Wachowski, No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *3 (C.D. Cal. Sept. 28, 2004) ("'[C]ompromise negotiations' do not always have a recognizable beginning and end like a trial, a deposition, or other litigious activities."); Liautaud v. GenerationXcellent, Inc., No. 00 C 6365, 2002 WL 230799, at *1 (N.D. Ill. Feb. 15, 2002) ("Not only is it clear from the wording of the letter that it is not an offer to compromise, but it is further clear that it was not made in compromise negotiations. There were no negotiations. Defendants never responded to the letter. Compromise negotiations are not unilateral."); Atmosphere Hosp. Mgmt., LLC v. Shiba Investments, Inc., 158 F. Supp. 3d 837, 845 (D.S.D. 2016) ("The court's first inquiry is to determine if any of the communications are offers to compromise within the meaning of Rule 408."); Poulos v. Summit Hotel Properties, LLC, No. CIV 09-4062-RAL, 2010 WL 2034634, at *4 (D.S.D. May 21, 2010) ("Authority from other federal courts establishes that a demand letter setting forth a party's factual position and asserting legal claims-absent an offer to compromise or settle a claim-does not constitute "compromise negotiations" under Rule 408."); Pierce v. F.R. Tripler & Co., 955 F.2d 820, 827 (2d Cir. 1992) ("It is often difficult to determine whether an offer is made "in compromising or attempting to compromise a claim.")

discussions consisted of Defendants pleading with Columbia not to breach the ROW Agreement and destroy their property, and Columbia repeatedly telling the Defendants that Columbia had the absolute right to remove the Red Maple Tree and unless Defendants complied with Columbia's demands they would be sued. To accurately assess the substance, nature and tenor of those communications it is necessary to review the chronology in some detail along with the contemporaneous e-mail traffic that was generated by the parties.

In early March 2017, Columbia's contractor SavaTree left a brochure on Defendants' door letting Defendants know that they would be starting clearing operations in the near future. Mr. Haas wrote to Ms. Tincher (who had signed the October 6, 2010 letter from Columbia), imploring Columbia not to take the Red Maple Tree explaining that:

> To destroy this tree would; aside from totally destroying 40 years of trimming, fertilizing and nurturing one of natures most beautiful specimens; would totally undo me. I have worked very hard to plant beautiful plants and flowers over the years to have as nice as possible surrounding. (Yes me, not a nursery company. . . I personally planted most of everything, the red maple tree was planted by the nursery. . . I wanted to be sure it lived.

See Exhibit No. 1. In that e-mail, Mr. Haas attached photos and requested two things. "Would you please forward these attached photos on to Mr. Antonio Redd (his e-mail was not on the brochure left on my door) and **would you and Mr. Redd do me the honor of coming to my home for a first look at the tree**." [Emphasis Added] Defendants were hopeful that if someone with senior authority at Columbia would take the time to at least view the Red Maple Tree they would agree there was no need to remove the Red Maple Tree.

On March 7, 2017, Mr. Haas wrote to Mr. Redd asking him to visit his house so he could see the Red Maple Tree to understand why it poised no danger to the pipeline as follows:

4

> Just spoke with Francis and was able to obtain your e-mail address. I am sending a copy of the e-mail I sent to Ms. Tincher yesterday. I would implore you as I did her to please give some consideration to allowing our beautiful red maple to remain. It will utterly destroy our landscaping. All of the rest of the right of way is just in grass . . . only the red maple would remain. ***I would reiterate my request that both of you come out and see that, in the large scheme of things, our tree is not going to impinge on the monitoring of the pipeline in any way***. To destroy this tree would just be wrong. I look forward to meeting both of you and thank you for your consideration. [Emphasis Added]

Exhibit No. 1. Mr. Redd respond on Saturday, March 11, 2017 as follows:

> We do apologize for the need to remove the tree. Our tree company will grind the stump and resurface the are in close to where the tree is now. Perhaps you can restore this area five feet on either side of the pipeline with some shrubs or low to the ground such as morning stars or Ivy's. Thanks for reaching out and we hope to be out of your way soon. Have a nice weekend.

Exhibit No. 1. There was no offer of compromise being made in these exchanges. Mr. Haas was asking Columbia not to remove the Red Maple Tree and for someone from Columbia with authority to come see the Red Maple Tree, and Columbia's response was it was going to remove the Red Maple Tree.

Mr. Haas was eventually able to reach Ms. Stephenson and asked her to come inspect the Red Maple Tree, explaining that the Red Maple Tree was not a threat to the pipeline because the root system was shallow and noninvasive. Ms. Stephenson stated to Mr. Haas in that phone conversation that she had consulted with two arborists, one inside the company and one outside of the company, and although they both told her that the root system for the Red Maple Tree was indeed shallow and noninvasive the Red Maple Tree still needed to be removed. Only after persisting urging that she come to the property to view the Red Maple Tree did Ms. Stephenson reluctantly agree to come to the property. The purpose of the

5

meeting was not to discuss a compromise of the claim but to convince someone with authority at Columbia that the Red Maple Tree did not need to removed.

On March 24, 2017, Ms. Stephenson, Mr. Redd, and another Columbia employee had a meeting with Mr. and Ms. Haas in their kitchen. The conversation became rather heated, and simply went in circles with the Columbia's representatives stating over and over again that the Red Maple Tree had to removed, even though the two arborists had told Ms. Stephenson that the roots were shallow and noninvasive. The tense meeting ended poorly with the Columbia representatives and Ms. Haas leaving to go outside to look at the Red Maple Tree while Mr. Haas remained inside, joining the rest of the group shortly afterwards outside.[2]

After that meeting, Mr. Haas wrote to the CEO of Columbia in pertinent part as follows:

> I had a visit from Antonio Redd, Karen Stephenson and another lady whose name escapes me. **They basically came to reinforce the mandate that my beautiful specimen red maple will be cut down to the ground Monday or Tuesday of next week**. I repeatedly asked how this particular tree in any way interfered with the pipeline. **Ms. Stephenson reiterated the fact that the arborist they contacted agreed that the root system of that tree is completely noninvasive**. They just kept saying that they had taken down other trees so therefore this tree must go. [Emphasis Added].

Exhibit No. 1. On March 26, 2017, Mr. Haas wrote to Mr. Redd, attaching the ROW Agreement and pointing out the "below cultivation" language and concluding by stating that:

> I would expect that, after your thorough review of this binding document, you **will agree to reassess you unwavering position** on trespassing on my private property to overly and intentionally destroy my valuable landscaping. In addition, upon observing SavATree in the area, each truck will be given a copy of the attached document prohibiting them from interfering with us "fully using and enjoying the premises". Again, we forbid any trespassing on our property to intentionally destroy our landscaping.

---

[2] Once outside, there were vague and non-specific suggestions made by Columbia about alternative landscaping plans that could be used by Defendants once the Red Maple Tree was removed.

6

Exhibit No. 1. As evidenced by these e-mails, the communications with Columbia consisted of Columbia reiterating their "mandate" and "unwavering" position that the Red Maple Tree had to be removed. There was no response by Columbia to these e-mails.

Mr. Redd came to the property on March 27, 2017, and told Mr. Haas that Columbia would be removing the Red Maple Tree, and other landscaping items the next day. Mr. Haas again wrote to Columbia's CEO stating that:

> I once again respectfully request that you recognize our rights under our legally binding Right-of-Way agreement and stop your Company's illegal attempts to destroy our valuable landscaping. Please. Should any attempt be made to destroy our property, it will be placed in the hands of the local police for illegal trespassing. We will not have any other choice.

Exhibit No. 1.[3] Mr. Haas secured his property line by placing yellow tape around the entrances, posting no trespasser signs, and his family had to keep a constant vigilance at their home to be present when Columbia arrived unannounced with their crew to take the Red Maple Tree so the police could be summoned. And on March 30, 2017, that is exactly what happened. Mr. Redd and his crew arrived at the property. Mr. Redd ignored the yellow barrier tape and no trespassing sign and entered upon Defendants' property to remove the Red Maple Tree and only retreated when confronted by Mr. Haas and being informed that the police had been summoned. The police arrived and instructed Mr. Redd and his crew that they had to leave the property. See Exhibit No. 2.

After that confrontation, Ms. Stephenson sent her letter dated April 5, 2017, acknowledging that: "Despite many conversations and communication, you have refused to

---

[3] Mr. Haas also wrote to Mr. Redd pointing out that Columbia had not even told them what Columbia intended to pay them for their "damages" if the Red Maple Tree was removed as required by the terms of the ROW Agreement. Simply asking an adversary how they intend to perform under the disputed contract does not translate the discussions into "compromise negotiations". Columbia never responded to this inquiry.

7

allow Columbia to remove the tree from its easement." Moreover, Ms. Stephenson made clear that unless Defendants allowed Columbia to remove the Red Maple Tree Columbia would sue them. ("We would like to avoid involving the courts, but we must proceed with the removal of the red maple tree.") And of particular significance to the instant issue, the letter makes clear that Columbia "is willing to have confidential discussions with you to discuss ways to address the effects of the removal of the tree, **but only if you agree to removal of the tree at this time**." [Emphasis Added] Thus, the letter concedes that up until then there had been no "compromise negotiations" and instead, Columbia would only engage in such compromise negotiations if Defendants first allowed Columbia to remove the Red Maple Tree before such compromise negotiations even began, and that the Defendants keep all such communications confidential and upon the breach of the confidentiality provision Columbia could revoke any agreement. Evidently, Columbia has a policy of not engaging in compromise negotiations with property owners unless the property owner agrees to keep such communications confidential, presumably because Columbia does not want it to be known by other property owners that they can stand up to Columbia and defend their rights under the easement agreements. Defendants refused to sign the confidentiality provision and of course were not going to allow Columbia to remove the Red Maple Tree simply in exchange for what they viewed as a worthless promise to enter into settlement discussions.

    In sum, Ms. Stephenson's admission that the roots of the Red Maple Tree were "shallow and noninvasive" was not made in the context of "compromise negotiations", but rather was made to demonstrate to the Defendants that it did not matter to Columbia whether the tree roots were shallow and noninvasive because Columbia's unilateral Minimum Guidelines

dictated that "any" tree – regardless of the depth of the roots had to be removed. And that unless Defendants capitulated to Columbia's position they would be sued in Court.

Finally, Rule 408(b) allows the Court to introduce such statements "for another purpose" – which other purpose is not limited to the examples cited in the Rule. For examples, such statements can be admitted to show knowledge and intent or for impeachment purposes as explained by the following Courts:

> Specifically, she contends that Neulak's comments are admissible to prove Warner Brothers' knowledge and state of mind. See Bankard America, Inc. v. Universal Bankcard Systems, Inc., 203 F.3d 477, 484 (7th Cir.2000) ("Courts have admitted evidence of offers or agreements to compromise ... to show the defendant's knowledge and intent"); Thompson v. Safeway, Inc., No. 01 C 3260, 2002 WL 500547, * 2 (N.D.Ill. Apr.2, 2002) ("Courts have routinely admitted evidence of offers or agreements to compromise for purposes of rebuttal, for purposes of impeachment, or to show the defendant's knowledge and intent")

Stewart v. Wachowski, No. CV03-2873 MMMVBKX, 2004 WL 5618386, at *5 (C.D. Cal. Sept. 28, 2004). Similarly,

> Under Rule 408, statements made during settlement discussions may be admissible for purposes other than proving liability for or amount of the underlying claim. ("This rule also does not require exclusion when the evidence is offered for another purpose."). For example, courts have permitted this evidence for purposes of impeaching witnesses. See, e.g., Stanton v. Tarantino, 637 F.Supp. 1051, 1081 (E.D.Pa.1986) (statements made during compromise negotiations admissible to impeach witness).

Frieman v. USAir Grp., Inc., No. CIV. A. 93-3142, 1994 WL 675221, at *9 (E.D. Pa. Nov. 23, 1994).

In the instant case, Ms. Stephenson will deny making the statement that Columbia knew that the tree roots were shallow and noninvasive and thus, the statement is admissible for impeachment purpose. Further, the statement is admissible to show that Columbia knew that the tree roots were shallow and noninvasive, that Columbia's intent and position is that Red

Maple Tree must be removed regardless of the depth of the roots, and that Columbia's Minimum Guidelines negated Columbia's obligation to maintain the pipeline "below cultivation" and the Defendants' right to "fully use and enjoy" their home.

Respectfully Submitted,

/s/ *Bradshaw Rost*
Bradshaw Rost, Esq., Bar No. 06172
Tenenbaum & Saas, P.C.
4504 Walsh Street, Suite 200
Chevy Chase, Maryland 20815
(301) 961-5300 – Phone
(301) 961-5305 – Fax
brost@tspclaw.com
*Counsel for Defendants*

**CERTIFICATE OF SERVICE**

**I HEREBY CERTIFY** that a copy of Defendants' Memorandum of Law as to Why Fed.R.Evid. 408 Does Not Apply on May 21, 2019 to the following:

Brent R. Gary, Esq.
Michael S. Dingman, Esq.
REED SMITH LLP
7900 Tysons One Place, Suite 500
McLean, Virginia 22102
*Counsel for Plaintiff*

/s/ *Bradshaw Rost*
Bradshaw Rost